Chloe KRISS, Plaintiff in Error,

v.

BANKERS LIFE AND CASUALTY COM-
PANY, a Corporation, Defendant
in Error.

No. 38034.

Supreme Court of Oklahoma.

Jan. 27, 1959.

Chas. R. Gray, W. N. Palmer, Pawhuska, for plaintiff in error.

Robert P. Kelly, Frank T. McCoy, Pawhuska, for defendant in error.

WILLIAMS, Justice.

This is an action brought by Chloe Kriss against the Bankers Life and Casualty Company to recover the maximal amount under a policy of insurance issued upon the life of Max Kriss, since deceased. From a judgment for plaintiff for an amount less than prayed for, plaintiff appeals, and defendant cross-appeals.

Plaintiff's claim for relief is based upon allegations that on the 21 day of October, 1930, the Damon Mutual Benefit Association issued a benefit certificate of membership No. 4607 in Group A-3 on the life of Max Kriss, for $1,000, payable upon the death of the insured, to the benefit of Chloe Kriss; that on July 1, 1954, Bankers Life assumed all the obligations under said policy; that Max Kriss died on June 14, 1956; that notice of death and proof of loss were filed with defendant, and that under the terms of the policy, the face value thereof, to-wit: $1,000, is due and payable, for which sum plaintiff sought judgment.

Defendant Bankers Life denied that it assumed the obligation of the Damon policy, and alleges that the Damon Mutual Benefit Association failed in June, 1937, and that the certificate issued by it to Max Kriss was cancelled and said certificate was not in force on June 14, 1956, the date of the death of Max Kriss.

The oral testimony, as reflected by the record, is practically limited to the witness Chloe Kriss, the beneficiary under the Damon certificate of insurance. A résumé of her testimony disclosed that the Damon Mutual Benefit Association, on the 21 of October, 1930, issued its certificate of membership No. 4607 in Group A-3 on the life of Max Kriss, wherein Damon agreed to pay the insured's beneficiary, at his death, the sum equal to $1 for each member in good standing in said group at the time the benefit becomes payable, not exceeding $1,-000; and wherein the members agreed to pay $1.50 semi-annual dues in May and November, and $1.10 upon the death of a member in his group; and from one to three assessments of $1.10 each year to create an emergency fund. After the Damon certificate was issued to Max Kriss, he received successive notices in writing from Damon and thereafter from Santa Fe National Life Insurance Co., an Oklahoma corporation, Teachers Insurance Co. of Texas, Guarantee Life Insurance Co. and last from Bankers Life and Casualty Company that monthly premiums in the amount of $3.30 should thereafter be paid them respectively. Complying wtih such advice, Max Kriss paid all monthly premiums from the respective dates of notice to date of his death. The notices thus referred to did not contain any further information with reference to the policy in question.

Plaintiff further introduced as part of her evidence in chief, a copy of Damon Mutual Benefit Association Membership Certificate issued to Max Kriss on the 21st day of October, 1930, and a copy of Bankers Life and Casualty Company Certificate of Assumption, which shows that Policy No. GR 4607

A–3 Max Kriss, named insured, which had been previously issued or assumed by Guarantee Reserve Life Insurance Co. of Fort Collins, Colorado, has been assumed and reinsured by the Bankers Life and Bankers Life agreement with the owner of the policy that it will perform the same in the place and stead of the Guarantee Reserve Insurance Co. The Bankers Life certificate bearing date of July 1, 1954, follows:

"Duplicate

Issued November 27, 1954.

Bankers Life and Casualty Company
Life Accident Health
Chicago, Illinois
Certificate of Assumption

"It is hereby certified that the policy identified below by name and number, heretofore issued or assumed by the Guarantee Reserve Life Insurance Company of Fort Collins, Colorado, has been assumed and reinsured by the Bankers Life and Casualty Company of Chicago, Illinois, provided said policy, according to its terms, is in force on the date hereof.

"The Bankers Life and Casualty Company hereby agrees with the owner of said policy that it will perform the same in the place and stead of the Guarantee Life Insurance Company subject to all the terms and conditions of said policy.

"In Witness Whereof, the Company has caused this instrument to be executed by its President and attested to by its Secretary and caused the corporate seal to be affixed hereto on this first day of July, 1954.

"Attest: C. T. Hyland
      Secretary
           John Dwan Arthur
           President
               (Seal)

"GR 4607 A–3
"Max Kriss
"% Osage Boot Shop
"Pawhuska, Okla.

It is important that this Certificate of Assumption be attached to your policy."

At the close of plaintiff's case in chief, the defendant interposed a demurrer upon the ground plaintiff's evidence did not support a claim upon which relief could be granted. The demurrer being overruled, defendant introduced certain documentary evidence as follows: (a) The original application of Max Kriss for policy in Damon Mutual Benefit Association; (b) Reinsurance agreement under date of May 1, 1937 between Damon Mutual Benefit Association and Santa Fe National Life Insurance Company of Oklahoma. The latter agreement provides in part as follows:

" * * * The Santa Fe National does hereby reinsure all outstanding policies of members of the Damon Mutual in good standing at 12:01 A.M. o'clock on the first day of June, 1937 for an amount of insurance which the present premium said policyholders are now paying will purchase on an annual renewable term basis to age 75 and then endowment at age 85, using the rates attached to this contract, made a part hereof and marked exhibit 'A' in determining the amount of such term insurance.

    \*     \*     \*     \*     \*     \*

"The Santa Fe National will mail to each of such policy holders an assumption agreement by which it will assume liability in accordance with the terms and provisions of this reinsurance contract, a copy of which is hereto attached marked exhibit 'B', and made a part hereof.

    \*     \*     \*     \*     \*     \*

"Each policyholder hereby reinsured shall be given the opportunity to change his form of certificate to any other form now being issued by the Santa Fe National without evidence of insurability and for an amount not to exceed the amount of insurance he previously carried in the Damon Mutual. Such right of transfer shall continue to the 31st day of December, 1937.

    \*     \*     \*     \*     \*     \*

"The Damon Mutual agrees to, and does hereby surrender its Charter and

right to do insurance business in the State of Oklahoma, and agrees that it will discontinue doing an insurance business in the State of Oklahoma.

\* \* \* \* \* \*

"The effective date of this contract shall be 12:01 a. m. o'clock, the first day of June, 1937. From and after such date the liability of the Santa Fe National to policyholders in good standing shall be for the amount of insurance herein provided to be given to such policyholders regardless of whether or not such policyholders signify their acceptance of this contract. Policyholders who continue to pay premiums from and after said date shall have coverage to the extent and in the amount as herein provided and nothing more. \* \*"

A certificate of the Insurance Commissioner of Oklahoma was attached stating the foregoing instrument is a true copy of the original Reinsurance Agreement between Damon Mutual Benefit Association and Santa Fe National Life Insurance Company of Oklahoma. Another Certificate of the Insurance Commissioner of Oklahoma was also introduced, which is as follows:

"State of Oklahoma,
County of Oklahoma, ss.
Certificate

"I do hereby certify that the records of the Oklahoma State Insurance Department show that Damon Mutual Benefit Association became insolvent prior to the report of examination filed August 20, 1936, and that said report shows an excess of liabilities over assets of $173.03, that assessments during 1935 on Group A–3 were 12 in number, being divided in mortuary 9, reserve 1, expense 2. That during said year said group had 14 deaths, which averaged approximately 13 per thousand members; that said Association operated on the assessment plan; that small effort was being made to obtain new business and the number in each group was constantly diminishing; that said Association surrendered its charter effective

June 1, 1937, and has never since been licensed to do business in Oklahoma.

"(Seal)  In Testimony Whereof, I hereto set my hand and cause to be affixed the Seal of this Department this 14th day of February A.D. 1957.

"Joe B. Hunt,
"Insurance Commissioner
"By: Harold G. Rhodes,
"Assistant Commissioner."

At the close of defendant's case both plaintiff and defendant moved the court for a directed verdict in their favor. The trial court sustained plaintiff's motion, directing the jury to return a verdict in favor of the plaintiff, Chloe Kriss, against the defendant, Bankers Life and Casualty Company in the amount of $340 and judgment was entered in conformity therewith. Defendant's motion for directed verdict was overruled, and each party has appealed.

As we view plaintiff's claim it is based upon her assertion that the Damon Policy, from and after its issue, remained in full force and effect, and that Bankers Life assumed and obligated itself to perform its conditions. The testimony of plaintiff and the record evidence does not support such contention. The record shows that the Damon Mutual became insolvent prior to August 20, 1936, and surrendered its charter effective June 1, 1937 as disclosed by the certificate of the Insurance Commissioner of Oklahoma, and did no business thereafter. After the Damon Mutual charter was surrendered, the assured received notice from the Santa Fe, Teachers of Texas, Guarantee Reserve of Colorado and Bankers Life, to remit premiums to them. The insured was thereby advised of a change of ownership of the original Damon policy and the payment of premiums upon a flat rate rather than upon an assessment basis. Furthermore, the assured received a written notice or certificate under date of November, 1954, two years prior to the assured's death, from Bankers Life that it had assumed and reinsured the obligations of the Guarantee Reserve Life Ins. Co. under the Damon pol-

icy. Clearly, the Bankers Life obligation did not go beyond the liability thus assumed and reinsured.

■ Plaintiff's contention that the Damon policy was based upon level rates and that therefore plaintiff was entitled to recover the full face value of the policy, $1,000, is without merit. The policy was based upon designated assessment or calls made by the Company as necessarily required. The distinction of the two forms of coverage is pointed out in our opinion in Quaid v. Quaid, Okl., 314 P.2d 359.

■ Plaintiff further concludes that the named companies did not advise the insured of the terms of the reinsurance agreement and that therefore she is not bound thereby.

As has been seen, the Commissioner of Insurance in 1937, under the provisions of Title 36, Sec. 696, O.S.1951, approved the sale of the defunct Damon Co. to the Santa Fe Co. That approval validated the reinsuring contract without more, under the record before us. Oklahoma Benefit Life Ass'n v. Bird, 192 Okl. 288, 135 P.2d 994.

The failure of the purchasing company to mail copies of the agreement to Damon policy holders did not invalidate that contract. Johnson v. American Life & Accident Ins. Co., Mo.App., 145 S.W.2d 444.

The trial court did not err in limiting plaintiff's recovery to the sum of $340, the amount due under the terms and provisions of the reinsurance agreement.

■ By way of cross-appeal, defendant asserts that the trial court erred in overruling defendant's demurrer to plaintiff's petition and in overruling defendant's demurrer to the evidence. Both of these propositions are based upon the contention that there is nothing in either the petition or the evidence to show any connection between defendant Insurance Company and the Damon policy sued upon. We do not agree. Plaintiff's petition alleged that defendant had assumed the policy sued upon and attached as an exhibit thereto, the Assumption Certificate issued by defendant. It is true that such certificate states that defendant will perform the policy of insurance is-

sued or assumed by the Guarantee Reserve Life Insurance Company, but such certificate also bears the certificate number and group number of the Damon policy sued upon, and the evidence reveals that the policy sued upon was the only policy that deceased had had and that plaintiff had written defendant concerning policy sued upon some two years prior to the death of the insured, and in response to such letter had received from defendant the Certificate of Assumption attached to the petition, together with a letter advising her to attach the certificate to the policy and advising that the premium on the policy was presently paid to December 1, 1954. We are of the opinion that the court did not err in overruling defendant's demurrers, and did not err in directing the verdict returned and entering the judgment rendered.

Judgment affirmed.